MARTIN RYAN, Plaintiff-Appellant, v. THE CITY OF CHICAGO *et al.*, Defendants-Appellees (Bernard McKay *et al.*, Intervening Plaintiffs-Appellants).

First District (2nd Division)   No. 85—2630

Opinion filed September 23, 1986.—Rehearing denied November 12, 1986.

Clinton A. Kirslov, of Gottlieb & Schwartz, of Chicago, for appellants.

Judson H. Miner, Corporation Counsel, of Chicago (Mary K. Rochford and Joseph A. Moore, Assistant Corporation Counsel, of counsel), for appellees.

JUSTICE HARTMAN delivered the opinion of the court:

The issues emanating from this appeal are whether: (1) the city of Chicago can retain for its own use all interest and income derived from certain pension fund taxes during the first 30 days after their receipt by the city; and (2) plaintiffs are entitled to restitution of all interest earned on pension tax funds withheld by the city of Chicago between January 1, 1979, and October 10, 1984.

Pursuant to statute, defendant city of Chicago (city) maintains four pension funds (pension funds): Policemen's Annuity and Benefit Fund; Firemen's Annuity and Benefit Fund; Municipal Employees', Officers' and Officials' Annuity and Benefit Fund; and Laborers' and Retirement Board Employees' Annuity and Benefit Fund (Ill. Rev.

Stat. 1985, ch. 108½, pars. 5—101, 6—101, 8—101, 11—101), which are funded by employee and city contributions (Ill. Rev. Stat. 1985, ch. 108½, pars. 5—168, 6—165, 8—173(a), 11—169(a)). Each year the city levies a special property tax to finance its portion of the pension funds. (Ill. Rev. Stat. 1985, ch. 108½, pars. 5—168, 6—165, 8—173(a), 11—169(a).) Nothing in the Illinois Pension Code (Ill. Rev. Stat. 1985, ch. 108½, par. 1—101 *et seq.*) (the Code) requires the city to maintain the special property tax receipts in a segregated account; instead, the Code prescribes that the city treasurer hold the proceeds "for the benefit" of the pension funds. Ill. Rev. Stat. 1985, ch. 108½, pars. 5—168, 6—165, 8—173, 11—169.

Property taxes in Cook County are collected by the Cook County collector twice per year for all taxing entities, including the city. The city treasurer receives the city's portion of the collected taxes, including the special levy pension fund taxes, from the collector. The tax receipts are issued to the city in a lump sum and the city comptroller then determines the portion that each of the city funds is entitled to receive. Once that determination is made, the comptroller allocates a dollar amount to each fund, including the pension funds.

The city makes payments to the pension funds throughout the year, but the payments have not always been made at the time that the tax receipts were allocated. Instead, the city has often kept the pension fund tax receipts in its aggregate funds account even after allocation. All interest earned by the pension fund has been retained by the city.

The city attempted to pay the full amount allocated to the pension funds by the end of the year in which the taxes were received and includes interest according to the Code's rate (3% or 4% accordingly) (Ill. Rev. Stat. 1985, ch. 108½, pars. 5—120, 8—124, 11—123) for money held by the city after the employees' contributions to the pension fund are made. According to deposition testimony of both the current and the preceding comptrollers, the city's withholding of payment to the pension fund was never due to an inability to pay but, rather, merely concerned cash flow considerations. The city has thereby received $8.6 million in interest on pension fund money retained more than 30 days after receipt for the period between January 1, 1979, and April 18, 1984, specifically excluding interest earned on the pension fund money during the first 30 days after receipt of the taxes from the collector.[1]

---

[1] It is unclear from the record precisely how much was earned on the pension funds during the first 30 days after receipt for the same five-year period.

On January 13, 1983, plaintiff Martin Ryan, a retired Chicago policeman and a participant in the police pension fund, filed an action in chancery for himself and as the representative of a class consisting of participants in all four city pension funds. The complaint alleged that the timing of the city's payment of property tax receipts to the pension funds was in violation of the Code; the city was required to contribute to the pension funds "as soon as possible or practicable"; and the city violated that proscription delaying its contribution and using the interest earned on the pension fund tax receipts for the city's general purposes. Ryan sought declaratory and injunctive relief and an accounting of interest earned and retained by the city on pension fund tax receipts. The circuit court denied class certification and the case proceeded as a derivative action by Ryan and on behalf of the police pension fund. On December 6, 1983, plaintiffs Bernard McKay, Walter Rucinski, Joseph Coglianese, and Louis Eisen intervened on behalf of the three remaining city pension funds.

On March 7, 1984, plaintiffs filed a motion for summary judgment requesting that the court: (1) order an accounting of the interest the city earned on the pension fund tax receipts; (2) order the city to turn over that interest; (3) order the city to segregate the pension fund tax receipts; and (4) order the city to pay over all interest to be earned in the future on pension fund tax receipts. On May 4, 1984, the court ordered the city to make a full accounting of all investment and interest income earned on pension fund tax receipts held more than 30 days between January 1, 1982, and April 19, 1984, and to create and maintain segregated pension fund accounts, but declined to rule on the validity of the city's payment practices and on the ownership of the investment and interest income.

In an order made effective October 10, 1984, the court ruled that the city acted as a fiduciary of the pension funds in receiving pension fund tax receipts. The court ordered the city to pay interest to the pension funds on pension fund tax receipts held beyond 30 days, but declined to order the city to alter its payment scheduling, and reserved for later ruling the issue of restitution of interest previously earned and retained by the city.

On January 8, 1985, plaintiffs filed a motion seeking full retroactive relief and a determination that the city must pay over all interest earned on pension fund tax receipts to the pension funds, which was denied on August 7, 1985. Relying on *Chevron Oil Co. v. Huson* (1971), 404 U.S. 97, 30 L. Ed. 2d 296, 92 S. Ct. 349, the court refused to give its October 10, 1984, order retroactive effect and also rejected plaintiffs' contention that section 1 of "An Act in relation to the de-

posit of public funds" (Ill. Rev. Stat. 1985, ch. 102, par. 34) required the city to pay the pension funds all the interest earned on the pension fund tax receipts.

Pursuant to Supreme Court Rule 304(a) (103 Ill. 2d R. 304(a)), the circuit court found no just reason to delay appeal as to two issues:

"i) whether Plaintiffs are entitled to retrospective relief, restitution of all profits earned by the City since January 1, 1979 on all withheld pension taxes; and

ii) whether prospectively from October 10, 1984, the City is required to pay to the Funds interest on withheld pension tax receipts earned during the first 30 days after receipt by the collector."

## I

Initially, plaintiffs contend that the city should pay over all interest earned on pension fund tax receipts as property of the pension funds. The circuit court ruled that the city was liable only for interest earnings which accrue when pension fund tax receipts are held for more than 30 days. None of the parties was able to identify any statutory authority to support the court's grant of a 30-day grace period. It is suggested that this period was imposed by virtue of the court's broad equitable powers.

Plaintiffs maintain, first, that each of the statutory pension funds includes a provision defining the relationship between the city treasurer and the pension fund tax receipts. They point to the following statutory requirements for support. The police pension fund provides (Ill. Rev. Stat. 1985, ch. 108½, par. 5—168):

"As soon as any revenue derived from the [pension fund] tax is collected it shall be paid to the city treasurer of the city *and shall be held by him for the benefit of the fund* in accordance with this Article." (Emphasis added.)

Similarly, the firemen's pension fund statute provides (Ill. Rev. Stat. 1985, ch. 108½, par. 6—165):

"As soon as any revenue derived from such taxes is collected, it shall be paid to the city treasurer *and held for the benefit of the fund,* and all such revenue shall be paid into the fund in accordance with the provisions of this Article." (Emphasis added.)

Finally, the municipal employees' and the laborers' pension funds both use precisely the same language (Ill. Rev. Stat. 1985, ch. 108½, pars. 8—173(a), 11—169(a)):

"Revenues derived from such tax shall be paid to the city

treasurer of the city as collected *and held by him for the benefit of the fund.*" (Emphasis added.)

Plaintiffs contend that the use of the phrase "for the benefit of" clearly demonstrates that the city has no interest in the pension fund tax receipts or in any earnings that are derived from those tax receipts.

Additionally, bolstering their argument, plaintiffs rely on section 2 of "An Act relating to certain investments of public funds by public agencies" (Ill. Rev. Stat. 1985, ch. 85, par. 902) (the Public Funds Act) which provides, in part:

> "To the extent a public agency has custody of funds not owned by it or another public agency and does not otherwise have authority to invest such funds, the public agency may invest such funds as if they were its own. Such funds must be released to the appropriate person at the earliest reasonable time, but in no case exceeding 31 days, after the private person becomes entitled to *** them. *All earnings accruing on any investments or deposits made pursuant to the provisions of this Act shall be credited to the public agency by or for which such investments or deposits were made,* *** except where by specific statutory provisions such earnings are directed to be credited to and paid to a particular fund.*" (Emphasis added.)

■ From the foregoing, it is clear that the statutory provisions requiring the city treasurer to hold the pension fund tax receipts for the benefit of the pension funds requires that any income or interest earnings derived from the holding of those funds necessarily belongs to the funds. It would do violence to the foregoing statutory provisions to construe them to allow the pension fund tax receipts to be held by the city for the benefit of the pension funds, but to then allow the interest earnings derived from that money to be retained by the city. Buttressing this conclusion is section 2 of the Public Funds Act, which mandates that earnings on publicly invested funds do not accrue to the literal holder of those funds, but rather belong to the beneficial owners thereof. (Ill. Rev. Stat. 1985, ch. 85, par. 902; *Village of Pawnee v. Johnson* (1984), 103 Ill. 2d 411, 420, 469 N.E.2d 1365.) Defendants' assertion that section 2 be applied only to funds which private persons are entitled to and not be extended to include the funds of public agencies, such as the pension funds, is contrary to the holding of our supreme court that section 2 applies to all investments by public agencies. *Village of Pawnee v. Johnson* (1984), 103 Ill. 2d 411, 417-18, 469 N.E.2d 1365.

Defendants' argument that the 30-day grace period allows them

time to process the pension fund tax receipts is also unpersuasive, since they fail to demonstrate how the processing time affects the identity of the party entitled to the earnings on the tax receipts. Defendants' apparent belief that requiring them to pay over the earnings from the tax deposits constitutes an independent financial obligation, a sort of "claim" against them, rather than simply a requirement that they surrender the earnings of funds that they are holding in trust for the pension funds, is unpersuasive. Finding the pension funds entitled to the earnings on the tax receipts does not result in the paying of any city funds to the pension funds; instead, the city is merely denied revenue to which it is not entitled.

The issue of when the city must pay the pension fund tax receipts over to the pension funds was not decided by the circuit court and is not before this court. The question of which entity should receive the interest earned on the tax receipts nevertheless is determinable without regard to the processing time. The fact that the city is legitimately holding the pension fund tax receipts while processing them is irrelevant to the issue of who is entitled to the earnings on those receipts. Similarly illogical is defendants' argument that the tax receipts belong to the city until they are paid over to the pension funds. Although the tax is levied to satisfy a city obligation, the specific statutes mandate that the tax receipts be held "for the benefit of the fund[s]." (Ill. Rev. Stat. 1985, ch. 108½, pars. 5—168, 6—165, 8—173(a), 11—169(a).) Accordingly, the order creating a 30-day grace period must be reversed.

## II

The second question made immediately appealable concerns whether the judgment of the circuit court should have retroactive effect to January 1, 1979, or should be limited to prospective relief from the effective date of the order, October 10, 1984.

Retroactive relief is the norm. In order for a judgment to be limited to prospective application only, three criteria must be satisfied (*Board of Commissioners v. County of Du Page* (1984), 103 Ill. 2d 422, 426-27, 469 N.E.2d 1370 (*Wood Dale II*), quoting *Chevron Oil Co. v. Huson* (1971), 404 U.S. 97, 106-07, 30 L. Ed. 2d 296, 306, 92 S. Ct. 349, 355):

"First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied [citation], or by deciding an issue of first impression whose resolution was not clearly foreshadowed [citation]. Second, *** 'we must ***

weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation.' *Linkletter v. Walker* [(1965), 381 U.S. 618, 629, 14 L. Ed. 2d 601, 608, 85 S. Ct. 1731, 1738]. Finally, we have weighed the inequity imposed by retroactive application ∗∗∗.''

■ In the case *sub judice*, defendants have noted that this is a case of first impression. That fact alone, however, does not satisfy the first element of *Chevron Oil Co. v. Huson*, since it is also required that the resolution not have been clearly foreshadowed. In the present instances there are specific statutory provisions which form the basis for the circuit court's ruling. In *Wood Dale II*, there were statutes that were directly in conflict; here, however, the statutes in question clearly provide that the city treasurer is to hold the tax receipts "for the benefit of" the pension funds. Further, the city has for some reason changed its procedures for handling and disbursing those funds. In the past, this issue was never raised since the funds were never held for more than a few days. More recently, due to the increasing time that the funds were held by the city, this action was commenced. Defendants assert their subjective good-faith belief that they were not acting improperly; nevertheless, the existence of the statutory mandate that the receipts be held for the benefit of the pension funds denies force to their contention. Although this is a case of first impression, we hold that the statutory mandate clearly foreshadowed its outcome and defendants have failed to satisfy the first element of the *Chevron Oil Co. v. Huson* test.

■ The second element, whether the purpose and effect of this "new" decision will best be served by retroactive or prospective application (*Board of Commissioners v. County of Du Page* (1984), 103 Ill. 2d 422, 430, 469 N.E.2d 1370), must also be decided adversely to the city. Restitution is proper when an entity has received money which belongs to another under such circumstances that in equity and good conscience defendant cannot be allowed to retain it. *Board of Trustees of Police Pension Fund v. Village of Glen Ellyn* (1949), 337 Ill. App. 183, 194-95, 85 N.E.2d 473.

■ The third element concerns the equity of imposing the order retroactively, considering the broad powers courts possess to balance all equities in these situations. (*Board of Commissioners v. County of Du Page* (1984), 103 Ill. 2d 422, 430, 469 N.E.2d 1370.) Here, the circuit court found that "[t]o compel the City to retrospectively pay $8.6 million ∗∗∗ would impose an unreasonable hardship on the City." In the absence of any evidence of such hardship, that conclusion must fail.

From the foregoing discussion, it must be concluded that no justification in the statutes, cases or equitable principles can be identified to support the city's position in retaining for its own benefit the earnings or interests on pension funds it collected for others. Nor is it inequitable to insist that the city repay to the pension funds any profits it has made or will make upon receipts it has withheld from the pension funds and full restitution must be made of all earnings upon withheld funds, whether retrospective or prospective. Accordingly, the circuit court order to the contrary must be and is reversed.

Reversed.

STAMOS and SCARIANO, JJ., concur.