MARTIN RYAN *et al.*, Plaintiffs-Appellees and Cross-Appellants, v. THE CITY OF CHICAGO *et al.*, Defendants-Appellants and Cross-Appellees.

First District (2nd Division)   Nos. 1—92—4435, 1—92—4454, 1—93—0832, 1—93—0966, 1—93—0967 cons.

Opinion filed August 8, 1995.

Susan S. Sher, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Jean Dobrer, Assistant Corporation Counsel, of counsel), for appellant City of Chicago.

Fagel & Haber (Alvin D. Meyers and Steven J. Teplinsky, of counsel), and Mayer, Brown & Platt (James D. Holzhauer and Javier H. Rubinstein, of counsel), both of Chicago, for appellant Firemen's Annuity and Benefit Fund of Chicago.

Krislov & Associates, Ltd. (Clinton A. Krislov, of counsel), and Sachnoff & Weaver (Lowell E. Sachnoff, of counsel), both of Chicago, for appellees.

David R. Kugler, Frederic P. Heiss, and William A. Marovitz, all of Chicago, for cross-appellees.

JUSTICE HARTMAN delivered the opinion of the court:

These consolidated appeals arise from a lawsuit brought against the City of Chicago (City) by four pension funds: Firemen's Annuity and Benefit Fund (Firemen's Fund); Policemen's Annuity and Benefit Fund; Municipal Employees', Officers', and Officials' Annuity and Benefit Fund; and the Laborers' and Retirement Board Employees' Annuity and Benefit Fund, based upon the City's retention for its own use of certain pension fund monies. In *Ryan v. City of Chicago* (1986), 148 Ill. App. 3d 638, 499 N.E.2d 517, *appeal denied* (1987), 113 Ill. 2d 585 (*Ryan I*), this court held that the City had improperly retained for its own benefit the profits it had made upon tax receipts it collected for the pension funds. We ordered full restitution "of all earnings upon withheld funds, whether retrospective or prospective." *Ryan I*, 148 Ill. App. 3d at 646.

On remand, the parties agreed to a judgment in the amount of

$19,324,131.38, representing simple interest which the City had earned and withheld from the pension funds. The City and three of the funds (Settling Funds) then settled on additional damages representing compound interest. The circuit court awarded the Firemen's Fund $3,072,943.43 in compound interest and incentive awards of $10,000 each to two of the fund's participant plaintiffs. The court also awarded the Firemen's Fund's attorneys $1,993,742.35 in fees calculated as a fixed percentage ($33^1/3\%$) of that fund's total recovery.

The City appeals the compound interest award to the Firemen's Fund; the Firemen's Fund appeals the award of attorney fees as well as the incentive awards; and plaintiffs appeal from the denial of their motion seeking additional fees from the City for fiduciary breach and from the court's refusal to award attorney fees for certain work done for the Settling Funds.

In order to comply with recently adopted page limitations set forth in Supreme Court Administrative Rule MR No. 10343, which accompanied amended Supreme Court Rule 23 (Official Reports Advance Sheet No. 15 (July 20, 1994) R. 23 (eff. July 1, 1994)), the written disposition in this appeal will be bifurcated into this opinion, to be published, and an unpublished Rule 23 order disposing of the remaining, nonprecedential issues, filed contemporaneously with this opinion.

The following issues are raised for our review. Their disposition, whether by this opinion or by Rule 23 order (Rule 23) are designated in parenthesis. The issues include: (1) whether the circuit court erred in awarding Firemen's Fund compound interest (opinion); (2) assuming the compound interest award was proper, whether the circuit court erred in calculating the award (opinion); (3) on Firemen's Fund's appeal, whether the circuit court erred in awarding attorney fees as a fixed percentage of the fund's recovery (opinion); (4) on Firemen's Fund's appeal, whether the circuit court abused its discretion in awarding lodestar-based attorney fees and costs without findings in the record as to the reasonable number of hours expended by counsel and counsel's reasonable hourly rate (Rule 23); (5) on Firemen's Fund's appeal, whether the circuit court erred by utilizing a lodestar risk multiplier in awarding attorney fees (Rule 23); (6) on Firemen's Fund's appeal, whether the circuit court erred in awarding attorney fees and expenses incurred in connection with the instant fee litigation (Rule 23); (7) on Firemen's Fund's appeal, whether the circuit court abused its discretion in granting incentive awards to certain plaintiffs (Rule 23); (8) on plaintiff's appeal, whether the circuit court erred in refusing to award additional attorney fees

for certain work done for the Settling Funds (Rule 23); and (9) on plaintiffs' appeal, whether the circuit court erred in denying their motion for an additional award of fees against the City for fiduciary breach (opinion).

In *Ryan I*, this court ordered the City to make full restitution to four municipal pension funds after finding that the City improperly withheld tax receipts from the funds, placed those receipts in interest-bearing accounts, and retained the interest generated for its own purposes. (*Ryan I*, 148 Ill. App. 3d at 638.) On February 15, 1989, the parties agreed to a partial judgment whereby the City would pay the funds $19,324,131.38 representing the principal amount of simple interest income earned by the City's use of pension tax revenues. The parties could not agree, however, about whether the funds were entitled to additional compensation representing the interest that would have been earned on the $19.3 million judgment had the City immediately paid it to the funds when it was generated rather than pursuant to the 1989 judgment. The City eventually settled this question with all the pension funds, except Firemen's Fund, for $10,383,122.60, representing "compound interest restitution and attorneys' fees."

The issues concerning the additional damages that the City owed Firemen's Fund were extensively briefed by the parties and on May 8, 1991, the circuit court ruled that *Ryan I* required the City to make full restitution to the funds in order to remedy the breach of its fiduciary duty. Accordingly, the court granted plaintiffs' motion for full compound interest fiduciary restitution upon the City's earnings from use of the pension tax levies. The court ordered the City to pay Firemen's Fund full compound interest computed at the rates earned by the fund upon its investments generally.

On October 7, 1991, the circuit court entered a $2,930,875.82 judgment in favor of Firemen's Fund for compound interest upon the fund's recovery under the February 15, 1989, partial judgment and granted incentive awards of $10,000 each to plaintiffs Walter Rucinski and Bernard McKay out of the fund's recovery. The judgment was later amended and increased to $3,072,943.43. The court placed this judgment money into escrow pending final resolution of the attorney fees issues.

Following this ruling, the circuit court considered further a fee dispute between Firemen's Fund and attorney Clinton Krislov, who acted as lead counsel for plaintiffs throughout this litigation. On May 28, 1992, Krislov filed a petition for attorney fees and costs, requesting $2.2 million from Firemen's Fund, arguing the amount was justified under either a "percentage of recovery" approach or a "lodestar

basis."[1] Krislov's petition further requested $350,000 from the Settling Funds for work done after May 21, 1990[2] , an additional award against the City to reimburse Firemen's Fund for its fees and a fee based upon an appropriate percentage of any additional award against the City.

On September 25, 1992, the circuit court granted Firemen's Fund's motion to strike the portion of Krislov's fee petition related to the instant fee litigation as well as its motion to strike the fee request of one attorney. The court denied, however, Firemen's Fund's motion to strike: the request for a percentage of recovery as attorney fees, improper time entries, current rates for historic work, and consideration of projected income or recovery. On November 17, 1992, Krislov revised his lodestar analysis by eliminating 570 hours connected with fee litigation. According to the revision, the overall lodestar was reduced to $1,136,629.62 with Firemen's Fund's 35% share being $397,820.

On December 14, 1992, the circuit court issued an opinion and order vacating its September 25 ruling striking Krislov's request for attorney fees and expenses incurred in connection with the fee dispute. Finding a meaningful lodestar analysis of Krislov's fees to be "nigh impossible," "unworkable in this case," and stating that "the findings could never be based on anything other than conjecture, surmise, intuition or gut feelings," the court adopted a percentage-of-the-fund method and awarded Krislov $1,993,742.35 as a $33^1/3$% fee from the $5,981,227.05 benefit conferred upon Firemen's Fund. For comparative purposes only, the court also found the fee supported by an approximate lodestar analysis based on 5,000 hours, a $175/hour rate and a 2.1 multiplier. The court also denied Krislov's requests for consideration of the present value of the future benefits, for a penalty award against the City for breach of fiduciary duty, for any fees for post-May 21, 1990, services rendered to the Settling Funds, and for interest on fees or incentive awards.

---

[1]Under a "percentage of recovery" approach, Krislov argued the requested fee of $2.2 million represented only 24% of the fund's total recovery since the fund recovered approximately $9 million in overall benefits as a result of the litigation. The petition also claimed that a $2.2 million fee was justified under the lodestar approach since the attorneys billed 5,700 hours of time at hourly rates ranging from $125 to $350, producing a lodestar value of $1.3 million. The petition approximated Firemen's Fund's share of the lodestar at $450,000 (35%) which, with a multiplier of 5, produced a fee of $2.25 million.

[2]On November 30, 1990, Krislov and the Settling Funds settled their fee dispute for $2.2 million for work done through May 21, 1990.

On February 16, 1993, the circuit court granted Krislov's motion for modification of costs, thus increasing his recovery by $45,713.86. The court also granted Krislov's request to correct the court's comparative lodestar analysis by allocating 35% of the lodestar work to Firemen's Fund's claim and using a multiplier of 4. These consolidated appeals were then timely filed.

## I

The City contends that the circuit court's compound interest award to Firemen's Fund constitutes "prejudgment interest" which cannot be awarded against a municipality except in limited circumstances.

Plaintiffs and Firemen's Fund counter that they are entitled to full compound interest due to *Ryan I*'s mandate that the City "repay to the pension funds any profits it has made or will make upon receipts it has withheld from the pension funds and full restitution must be made of all earnings upon withheld funds, whether retrospective or prospective." (*Ryan I*, 148 Ill. App. 3d at 646.) They argue that they received full equitable restitution for the City's breach of its fiduciary duty rather than "prejudgment interest."

■ Restitution may be recovered as interest when warranted by equitable considerations. (*In re Estate of Wernick* (1989), 127 Ill. 2d 61, 87, 535 N.E.2d 876 (*Wernick*). See also *Martin v. Heinold Commodities, Inc.* (1992), 240 Ill. App. 3d 536, 608 N.E.2d 449, *aff'd in part & rev'd in part* (1994), 163 Ill. 2d 33.) Equity allows or withholds interest in accordance with what is equitable and just in view of all the circumstances in the case (*People ex rel. Barrett v. Farmer's State Bank* (1938), 371 Ill. 222, 224, 20 N.E.2d 502), and the amount of interest allowed need not fall within any precise terms. (*Wernick*, 127 Ill. 2d at 87.) Whether equitable circumstances support an award of interest is a matter lying within the sound discretion of the circuit court and will not be reversed absent an abuse of that discretion. (*Wernick*, 127 Ill. 2d at 87.) The supreme court held that in an action for breach of fiduciary duty, a court could award equitable interest to make an injured party whole since statutory prejudgment interest "does not provide an accurate measure of compensation for money wrongfully withheld." *Wernick*, 127 Ill. 2d at 87-89.

■ In *Ryan I*, this court ordered the City to repay to the pension funds any profits it had made upon withheld tax receipts and to make "full restitution *** of all earnings upon withheld funds." (*Ryan I*, 148 Ill. App. 3d at 646.) In accordance with *Ryan I*'s mandate, the circuit court expressly awarded Firemen's Fund compound interest as part of its judgment of full restitution and not as a separate

award of statutory or common law prejudgment interest. The record discloses that in granting compound interest, the circuit judge stated:

> "I am satisfied that this thing has to be resolved on the basis of the concept of *full equitable restitution* rather than as interest or prejudgment interest ***.

* * *

> The entitlement to *full restitution,* compound interest does not implicate the prejudgment interest statute or an analysis of prejudgment interest cases [but] implicate[s] *** an analysis of righting a wrong *** done by a trustee to its beneficiaries." (Emphasis added.)

We agree. The City's characterization of the compound interest award as "prejudgment interest" is unpersuasive. Firemen's Fund did not seek separate interest on a final judgment, but compound interest as part of its effort to obtain full reimbursement from the City for wrongful use of fund money. Significantly, the February 15, 1989, agreed order on the amount of simple interest owed by the City was designated as a *partial* judgment, indicating that compound interest was part of Firemen's Fund's original claim. Compound interest was awarded here as part of the court's overall judgment of equitable restitution and not as a separate award of prejudgment interest.

Plaintiffs and Firemen's Fund also posit that the circuit court had statutory authorization to award compound interest under the Illinois Pension Code (40 ILCS 5/1—101 *et seq.* (West 1992)) in that the Code subjects a wrongdoing fiduciary "*to such equitable or remedial relief as the court may deem appropriate,* including the removal of such fiduciary." (Emphasis added.) 40 ILCS 5/1—114(a) (West 1992).

In the present case, the court specifically found that compound interest was required in order to make full equitable restitution under the Pension Code. (*Cf. Loeffler v. Frank* (1988), 486 U.S. 549, 564, 100 L. Ed. 2d 549, 563, 108 S. Ct. 1965, 1974 (holding that the phrase "any other equitable relief as the court deems appropriate" provides for prejudgment interest against a private or governmental party).) The circuit court correctly found that the Pension Code provides statutory authorization for an equitable compound interest award.

In summary, we conclude that the circuit court's award of compound interest was not an abuse of discretion but provided Firemen's Fund full equitable restitution. Further, the circuit court's restitution award finds statutory support in the Illinois Pension Code.

## II

The City next maintains that, assuming *arguendo*, the compound interest award is proper, the amount awarded was excessive because it exceeded the statutory post-judgment interest rate of 6%.

■ In equity, the amount of interest allowed need not fall within any precise terms. (*Wernick*, 127 Ill. 2d at 87.) Moreover, the statutory rate for an award of prejudgment interest does not provide an accurate measure of compensation for money wrongfully withheld. (*Wernick*, 127 Ill. 2d at 88.) An equitable award of interest is a matter within the circuit court's sound discretion and will not be reversed absent an abuse of that discretion. *Wernick*, 127 Ill. 2d at 87.

Here, the court awarded interest based upon equitable and not statutory interest considerations. Statutory interest rates are inapplicable. The City's attempt to characterize the compound interest award as post-judgment interest on the parties' February 15, 1989, partial judgment order is without merit. Instead, the February 15, 1989, *partial* judgment governing simple interest was not complete because the issue of compound interest had not been settled. The compound interest award was part of the court's judgment granting Firemen's Fund full restitution and not "post-judgment" interest on the February 15, 1989, partial judgment order.

The circuit court did not abuse its discretion in awarding Firemen's Fund interest compounded at the fund's investment rate since no other rate would have provided full equitable restitution.

## III

Firemen's Fund charges that the circuit court abused its discretion in awarding attorney fees as a fixed percentage of the fund's recovery rather than following Illinois precedent which requires use of the lodestar method for calculating fees in common fund and derivative cases.

■ In the absence of statutory authority or a contractual agreement between the parties, a successful litigant may not recover attorney fees or costs of the litigation from his or her adversary. (*Saltiel v. Olsen* (1981), 85 Ill. 2d 484, 488, 426 N.E.2d 1204.) The general rule requiring litigants to bear their own costs and attorney fees does not interfere, however, with the power of courts of equity to permit a litigant or lawyer who recovers a common fund for the benefit of others to recover costs and reasonable fees from the fund as a whole. (*Boeing Co. v. Van Gemert* (1980), 444 U.S. 472, 478, 62 L. Ed. 2d 676, 681, 100 S. Ct. 745, 749; *Baksinski v. Northwestern University* (1992), 231 Ill. App. 3d 7, 12, 595 N.E.2d 1106, *appeal denied* (1992), 146 Ill. 2d 622 (*Baksinski*).) The award of fees under the common fund doctrine

rests upon equitable considerations of *quantum meruit* and the prevention of unjust enrichment; an attorney is entitled to an award from the fund for the reasonable value of his or her services. (*Baksinski*, 231 Ill. App. 3d at 13.) Such an award operates to spread the cost of the litigation proportionately among those who share in the benefit of his or her efforts. *Baksinski*, 231 Ill. App. 3d at 13.

■ Historically courts, in their exercise of discretion, have applied a reasonableness standard in determining the amount of a common fund fee award, with the percentage-of-the-fund approach (percentage analysis) emerging as the dominant method of calculating attorney fees. (*Court Awarded Attorney Fees, Report of the Third Circuit Task Force* (1985), 108 F.R.D. 237, 242 (*Third Circuit Report*); *Swedish Hospital Corp. v. Shalala* (D.C. Cir. 1993), 1 F.3d 1261, 1265.) Percentage analysis sometimes resulted in exorbitant fees, however, which sparked criticism of the courts and of the legal profession, and thus generated pressure to find alternative methods of calculating fees. (*Leader v. Cullerton* (1976), 62 Ill. 2d 483, 488, 343 N.E.2d 897; *Third Circuit Report*, 108 F.R.D. at 242.) As a result, in *Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.* (3d Cir. 1973), 487 F.2d 161, the Third Circuit developed the "lodestar" approach which shifted the emphasis from a fair percentage of recovery to the value of the time expended by counsel. The lodestar approach quickly gained acceptance in other Federal courts because it was viewed as more reasonable than the percentage analysis for making fee awards in modern complex litigation. *Third Circuit Report*, 108 F.R.D. at 244.

■ In the 1970's, our supreme court followed the then majority of Federal courts by accepting the lodestar computation method. (*Fiorito v. Jones* (1978), 72 Ill. 2d 73, 377 N.E.2d 1019; *Leader v. Cullerton* (1976), 62 Ill. 2d 483, 343 N.E.2d 897; *Flynn v. Kucharski* (1974), 59 Ill. 2d 61, 319 N.E.2d 1. See also *Baksinski*, 231 Ill. App. 3d at 13.) Under the lodestar method, where a common fund has been created, attorneys for the successful plaintiff may directly petition the court for the reasonable value of their services which benefitted the class. (*Baksinski*, 231 Ill. App. 3d at 13-14.) In determining compensation, the court calculates the number of hours which benefitted the class and then fixes an hourly rate for each attorney, taking into account the nature of the services performed, the complexity of the undertaking and the hourly fee charged for similar services by attorneys with similar skills and qualifications. (*Fiorito*, 72 Ill. 2d at 90; *Leader*, 62 Ill. 2d at 491-92.) The hourly rates are multiplied by the hours expended, producing the "lodestar" computation which may be adjusted by a weighted multiplier to account for the contingent

nature of the undertaking and the benefits conferred upon the class. (*Fiorito*, 72 Ill. 2d at 90-91.) The amount of the attorney fees award is within the circuit court's sound discretion. *Leader*, 62 Ill. 2d at 488; *Baksinski*, 231 Ill. App. 3d at 14.

In approving the lodestar approach, our supreme court reasoned that although class action fees are contingent upon success, a class action is not a typical contingent-fee case because the amount of the fee has not been fixed by voluntary agreement between the client and his or her attorney. (*Fiorito*, 72 Ill. 2d at 87-88; *Flynn*, 59 Ill. 2d at 66.) Rather, the fee is taken, by order of the court, from money that belongs to others, *i.e.*, the fund. (*Fiorito*, 72 Ill. 2d at 88; *Flynn*, 59 Ill. 2d at 67.) Consequently, the court concluded that the rights of the class must be carefully considered and that the time expended becomes a significant factor in determining the fee. *Flynn*, 59 Ill. 2d at 67.

In the past decade, however, the lodestar approach has been subjected to increased scrutiny as its deficiencies began to offset or exceed its benefits. (*Third Circuit Report*, 108 F.R.D. at 246.) The Third Circuit, which developed the lodestar method, appointed a task force to compare the respective merits of lodestar and percentage analysis. The task force enumerated nine deficiencies identifiable in the lodestar method: (1) it increases the workload of an already overtaxed judicial system, (2) it is insufficiently objective and produces results that are far from homogenous, (3) it creates a sense of mathematical precision that is unwarranted in terms of the realities of the practice of law, (4) it is subject to manipulation by judges who prefer to calibrate fees in terms of percentages of the settlement fund or the amounts recovered by the plaintiffs or of an overall dollar amount, (5) it has led to abuses such as lawyers billing excessive hours, (6) it creates a disincentive for the early settlement of cases, (7) it does not provide the trial court with enough flexibility to reward or deter lawyers so that desirable objectives will be fostered, (8) it works to the particular disadvantage of the public interest bar because the lodestar is lower in civil rights cases than in securities or anti-trust cases, and (9) it is confusing and unpredictable in its administration. (*Third Circuit Report*, 108 F.R.D. at 246-49.) The task force recommended retention of the lodestar in some statutory fee cases but concluded that a percentage fee was the best determinant of the reasonable value of services rendered by counsel in common fund cases. *Third Circuit Report*, 108 F.R.D. at 255-56.

Accordingly, most Federal circuits that have revisited the issue recently either have abandoned the lodestar in favor of a percentage fee in common fund cases (*Swedish Hospital Corp. v. Shalala* (D.C.

Cir. 1993), 1 F.3d 1261; *Camden I Condominium Association, Inc. v. Dunkle* (11th Cir. 1991), 946 F.2d 768) or have granted the district court discretion to determine which method is more suitable in a particular case. *Florin v. Nationsbank of Georgia, N.A.* (7th Cir. 1994), 34 F.3d 560. Accord *In re Washington Public Power Supply System Securities Litigation* (9th Cir. 1994), 19 F.3d 1291; *Uselton v. Commercial Lovelace Motor Freight, Inc.* (10th Cir. 1993), 9 F.3d 849; *Rawlings v. Prudential-Bache Properties, Inc.* (6th Cir. 1993), 9 F.3d 513. See also *Boeing Co. v. Van Gemert* (1980), 444 U.S. 472, 62 L. Ed. 2d 676, 100 S. Ct. 745 (approving a fee award based upon the percentage analysis in a common fund case). But see *Longden v. Sunderman* (5th Cir. 1992), 979 F.2d 1095; *Walitalo v. Iacocca* (8th Cir. 1992), 968 F.2d 741.

The growing weight of authority, then, indicates that although the lodestar is still¹ alive, particularly with regard to statutory fee-shifting cases, a percentage fee also may be appropriate in common fund cases.

■ The case *sub judice* illustrates the advantages in granting the circuit court discretion to choose either the lodestar or percentage method. The circuit court found a lodestar analysis impossible because the case involved not only "9 years of legal efforts and more than 5700 billable hours" but "[n]either the lawyers challenging the bona fides of Krislov's time entries nor the court charged with valuing his efforts were [*sic*] involved during the first six years of the relevant nine-year period." The court found additional obstacles to a credible lodestar analysis, including the fact that Krislov represented four city pension funds, so that allocation of the myriad time entries to that time spent solely for Firemen's Fund was impossible. The court also questioned the rate it should use in computing the lodestar since Krislov's hourly rates had changed over the course of the nine-year litigation.

Percentage analysis approach eliminates the need for additional major litigation and further taxing of scarce judicial resources which occurred here as a result of plaintiffs' request for attorney fees. Significantly, according to plaintiffs, nearly half of the 11,000-page record in this case is devoted to the fee litigation. Consequently, the court ordered a 33¹/₃% fee due to the extreme contingency risk, plaintiffs' financing and prosecuting the claim without assistance from the funds, winning a $33 million hard cash benefit from a tenacious adversary, and engaging in satellite litigation to protect the money benefit from a collateral attack.

Firemen's Fund alleges that controlling Illinois precedent requires use of the lodestar method in common fund cases and that

only the supreme court can overrule or modify its previous opinions. Although our supreme court has approved the lodestar method in this State, it has never unequivocally and definitively ruled that percentage analysis may never be utilized in common fund cases.

The circuit court did not abuse its discretion in determining attorney fees based upon percentage rather than lodestar analysis.

## IV

Plaintiffs maintain the circuit court abused its discretion in denying their request that a substantial portion of Firemen's Fund's attorney fees be surcharged as an additional award against the City due to its breach of fiduciary duty.

■ Plaintiffs first contend, in this regard, that common law routinely surcharges self-dealing fiduciaries for legal costs. The law regarding common fund cases does not authorize the circuit court to shift fees to an adversary but attempts to spread the fees among those who benefitted from the litigation. Under the common fund doctrine, courts of equity may permit an attorney to recover costs and reasonable fees from the fund itself or from its other beneficiaries. (*Baksinski*, 231 Ill. App. 3d at 12.) Therefore, in common fund cases, the award of fees and expenses is not charged against the adversary, as is disallowed by the "American Rule," but rather, against the persons or entities benefitted by the successful creation or preservation of the fund. (*Baksinski*, 231 Ill. App. 3d at 13.) Although plaintiffs rely upon a number of cases from foreign jurisdictions, they cite no Illinois case authorizing an award of attorney fees against a breaching fiduciary in a common fund situation.

■ The Illinois Pension Code (40 ILCS 5/1—101 *et seq.* (West 1992)) is claimed to be authority for awarding fees against the City, plaintiffs submitting that sections 1—114 and 1—115 of the Code could be so construed; however, neither provision expressly authorizes an award of attorney fees. The circuit court may not award statutory attorney fees in the absence of specific language. See *Qazi v. Ismail* (1977), 50 Ill. App. 3d 271, 273, 364 N.E.2d 595; *City of Chicago v. Illinois Fair Employment Practices Comm'n* (1975), 34 Ill. App. 3d 114, 116-17, 339 N.E.2d 260.

Although attorney fees are not explicitly mentioned in section 1—114 of the Illinois Pension Code, plaintiffs contend that this statutory provision generally tracks the enforcement provisions of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132 (1988), which authorizes attorney fees. ERISA expressly authorizes a fee award, however; the Illinois Pension Code neither expressly authorizes fees nor incorporates ERISA.

■ Plaintiffs argue that the circuit court erred in concluding that an additional fee award for fiduciary breach would be punitive and barred by the Local Governmental and Governmental Employees Tort Immunity Act (Act) (745 ILCS 10/1—101 *et seq.* (West 1992)). The Act immunizes the City from paying "punitive or exemplary damages in any action brought directly or indirectly against it by the injured party or a third party." (745 ILCS 10/2—102 (West 1992).) Attorney fees cannot be awarded as a separate entity distinct from punitive damages, absent a statutory provision specifically authorizing an award of such fees. (*E.J. McKernan Co. v. Gregory* (1993), 252 Ill. App. 3d 514, 546, 623 N.E.2d 981.) Indeed, plaintiffs acknowledge the punitive nature of such an award in their brief when they state that a "fee award here would *deter* others from similar actions, since it makes the *punishment* worse than merely returning the money." (Emphasis added.) Plaintiffs' attempt to obtain a punitive award of attorney fees from the City is prohibited by the Act.

Plaintiffs assert that the Act does not apply to this case because it involves a contractual dispute. The City declares that its use of the pension funds' monies constitutes the tort of conversion which is covered by the Act. (*Martel Enterprises v. City of Chicago* (1991), 223 Ill. App. 3d 1028, 1032-33, 584 N.E.2d 157.) Assuming, *arguendo*, that plaintiffs' claim sounds in contract, however, the City points out that such a claim does not entitle a plaintiff to punitive damages. Generally, punitive damages are not recoverable for breach of contract; the sole purpose of contract damages is to compensate the nonbreaching party, and punitive damages are not available even for a "wilful" breach of contract. *Morrow v. L.A. Goldschmidt Associates, Inc.* (1986), 112 Ill. 2d 87, 94, 492 N.E.2d 181.

Plaintiffs submit that even if the Act applies, a fee award need not be characterized as punitive. As discussed above, the circuit court specifically found that such an award would be punitive and plaintiffs conceded its punitive nature in their brief.

The circuit court did not abuse its discretion in denying plaintiffs' request that a portion of the attorney fees be surcharged as an additional award against the City.

For the reasons set forth, we find no reversible error in the circuit court's disposition of the issues articulated above and, accordingly, affirm.

Affirmed.

SCARIANO, P.J., and DiVITO, J., concur.