AARON S. WOLFF, Plaintiff-Appellant, v. AMPACET CORPORATION, Defendant-Appellee.

First District (2nd Division)   No. 1—95—4342

Opinion filed November 1, 1996.—Rehearing denied November 25, 1996.—Modified opinion filed November 27, 1996.

Jack Joseph, of Chicago, for appellant.

Daniel Commings and Alan S. Madans, both of Chicago, for appellee.

JUSTICE SCARIANO delivered the opinion of the court:

Plaintiff Aaron S. Wolff (Wolff), an attorney, represented himself and three creditors in a bankruptcy proceeding and obtained a ruling allowing his claims and those of his clients against the bankruptcy estate. Defendant Ampacet Corporation (Ampacet), a New York corporation, was also a creditor of the bankrupt. Though he had no attorney-client relationship with Ampacet, and although it was not directly involved in the proceeding, Wolff sought to recover attorney fees from Ampacet on a variety of theories, the gist of which is that Ampacet was able to recover on its claim as the result of Wolff's actions and that it would be inequitable to allow Ampacet to reap that benefit gratuitously.

The circuit court took the case on cross-motions for summary judgment and rejected each of Wolff's theories of recovery as a matter of law; it therefore denied his motion for summary judgment and granted Ampacet's. This appeal followed.

## Background

The salient facts of the case are undisputed. In September of

1984, Fesco Plastics Corporation (Fesco) filed for protection under chapter 11 of the Federal Bankruptcy Act (the Code) (11 U.S.C. § 101 *et seq.* (1994)). In its petition, Fesco listed Ampacet, Wolff, and a number of other creditors, all of whom were considered "deemed filed" under the Code. As such, these creditors were not required to take any further action to present their claims in the bankruptcy court.

In October of 1985, however, the Fesco bankruptcy was converted into a chapter 7 liquidation proceeding, and a deadline of February 6, 1986, was set for the filing of claims against the bankrupt estate. Many of the deemed-filed creditors took no action, believing that their prior status carried over into the liquidation proceeding. Among this group were Wolff and Ampacet. In April of 1987, the bankruptcy court upheld the trustee's request to bar the claims of all deemed-filed creditors who had missed the February 6 filing date. This decision would have barred Ampacet's claim permanently if no further action were taken.

Ampacet did not appeal the bankruptcy court's determination. Wolff and three other creditors (represented now by Wolff) did opt to appeal, however. Ampacet's claim was valued at $103,450.30; the claims of Wolff and the three creditors he represented (the Lisk creditors) aggregated approximately $95,000. The Lisk creditors entered into a contingent fee agreement with Wolff, under which his fee would be a percentage of any recovery obtained by his client/creditors if he successfully revived their claims. On July 30, 1990, the United States Court of Appeals for the Seventh Circuit reversed the bankruptcy court and the district court, holding that the Lisk creditors' claims were to be considered timely filed for chapter 7 purposes (*In re Fesco Plastics Corp.* (7th Cir. 1990), 908 F.2d 240). In all of these appellate proceedings, Wolff had no direct contact with Ampacet and did not purport to represent it.

Based on the seventh circuit's decision, in August of 1991, the trustee reversed himself, honoring the claims of *all* the deemed-filed creditors of the estate, including Ampacet, Wolff and the Lisk creditors. Wolff's claim was accordingly paid in conformity with the Code, as were the claims of the Lisk creditors, and Wolff received the negotiated contingent fee from those creditors.

Ampacet had relocated during the period in which Wolff was prosecuting the appeal, however, and did not learn of the results until contacted by him. Ampacet thereafter, through attorneys it had retained, reinstituted its claim and recouped approximately $65,000 of its $103,450 claim. Wolff attempted to collect an attorney fee from Ampacet, as well as from other non-Lisk creditors whose claims had

been revived.[1] Wolff's claims were rebuffed, first by Ampacet and later by the bankruptcy court. Wolff appealed the denial of his fee request through to the United States Court of Appeals for the Seventh Circuit, which upheld the decision on a technical ground: because the Code does not confer the power to adjudicate fee disputes between creditors, the bankruptcy court lacked authority over the claim. Wolff then filed this action in the circuit court of Cook County.

## Analysis

Wolff maintains that his entitlement to a fee from Ampacet is authorized by the "common fund" doctrine or as a remedy in the nature of restitution. We address these arguments *seriatim*.

■ Wolff's common fund theory of recovery requires an appreciation of the origins and mechanics of that remedy. The doctrine was created by the courts as an equitable compromise to address situations in which a plaintiff bestows a benefit on one or more parties who did not solicit the benefit, and who therefore would not otherwise be obligated to pay for it. The common fund doctrine was first recognized by the United States Supreme Court in *Trustees v. Greenough*, 105 U.S. 527, 26 L. Ed. 1157 (1882), and more recently in *Boeing Co. v. Van Gemert*, 444 U.S. 472, 62 L. Ed. 2d 676, 100 S. Ct. 745 (1980). In *Boeing*, the Court explained the doctrine thus:

> "[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." 444 U.S. at 478, 62 L. Ed. 2d at 681, 100 S. Ct. at 749.

See *Domenella v. Domenella*, 159 Ill. App. 3d 862, 867, 513 N.E.2d 17 (1987). Our supreme court, in recently addressing the doctrine, stated:

> "The common fund doctrine permits a party who creates, preserves or increases the value of a fund in which others have an ownership interest to be reimbursed from that fund for litigation expenses incurred, including counsel fees. [Citation.] It is now well established that 'a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.' *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 62 L. Ed. 2d 676, 681, 100 S. Ct. 745, 749 (1980). The underlying justification for reimbursing attorneys from a common fund, as explained by the United States Supreme Court in three early cases, is that, unless

---

[1]Wolff demanded a total of $120,945 out of the distributions to all the non-Lisk, deemed-filed creditors, including Ampacet; those creditors had claims totalling over $800,000, and were expected to recoup almost half that amount (*In re Fesco Plastics Corp.*, 996 F.2d 152, 154 (7th Cir. 1993)).

the costs of litigation are spread to the beneficiaries of the fund, they will be unjustly enriched by the attorney's efforts." *Scholtens v. Schneider*, 173 Ill. 2d 375, 385 (1996).

The crux of Wolff's claim is that, through his efforts in pursuing the Lisk creditors' claims, he vindicated the rights of the remaining deemed-filed creditors such as Ampacet and that it would be unfair for Ampacet to reap where it has not sown. Accordingly, he seeks an order compelling Ampacet to pay him for his efforts.

There is a strong element of equity in Wolff's argument. The record supports his assertion that, but for his efforts, Ampacet's claim would have been permanently barred. The claim runs aground on the shoals of two infirmities: (a) the circuit court's jurisdiction over Ampacet is insufficient for the application of the common fund doctrine; and (b) the basis for Wolff's recovery runs afoul of Illinois law.[2]

■ The equitable component of the common fund doctrine is the unfairness inherent in forcing one plaintiff to pay the full cost of the litigation when there are others who gain the same benefit. It is for that reason that the doctrine allows the court to decree an equitable sharing of the burden of attorney fees among all the parties who benefit. As the court stated in *DeBruyn v. Elrod*, 121 Ill. App. 3d 290, 292, 459 N.E.2d 971 (1983):

> "The 'common fund' or 'common benefit' doctrine allows a party who has conferred a benefit on another through litigation to recover a *share* of attorney fees from those who benefit." (Emphasis added).

See also *Process Color Plate Co. v. Chicago Urban Transportation District*, 125 Ill. App. 3d 885, 891, 466 N.E.2d 1033 (1984). The attorney who prosecuted the claim does not recover a full, separate fee from each of the benefitted parties; instead, he recovers a single fee, but the payment of that fee is parceled among a larger group in the interests of fairness. The *Scholtens* court recognized this fact, as witness the court's use in its opinion of terms like "reimbursement" and how it speaks of a singular "attorney's fee from the fund as a whole." *Scholtens*, 173 Ill. 2d at 385.

■ It is well established under Illinois law that "if no fund has

---

[2]Indeed, in the circuit court's analysis, there is a third flaw. The circuit court rejected Wolff's common fund claim because it found that the "fund" consisted of the bankrupt's assets, marshalled by the trustee for the estate. Since the "fund" existed independent of Wolff's actions, and all Wolff did was create additional claimants against the fund, the circuit court refused to apply the common fund doctrine. This analysis finds support in Illinois law (see *Domenella v. Domenella*, 159 Ill. App. 3d 862 (1987)). We need not reach this issue, as we dispose of the claim on the other two grounds.

been placed under the control of the court, then the court lacks authority to award fees" (*Client Follow-Up Co. v. Hynes*, 105 Ill. App. 3d 619, 627, 434 N.E.2d 485 (1982); *Hamer v. Kirk*, 64 Ill. 2d 434, 440-41, 356 N.E.2d 524 (1976)). This requirement is founded on the purpose of the doctrine itself: to allow a court to prorate the costs of the litigation over all the beneficiaries (*Scholtens*, 173 Ill. 2d at 385).

■ Here, Wolff brought only two of the hundreds of beneficiaries before the court.[3] Whatever the merits of Wolff's claim, at no time was the fund ever placed under the control of the circuit court. The funds used to pay the deemed-filed creditors were, at all times, under the jurisdiction of the bankruptcy court. Thus, it would be impossible for the circuit court to fashion a reasonable apportionment of the fee among the hundreds of parties who benefitted from Wolff's efforts. Those parties, it bears repeating, were not before the circuit court. Wolff's complaint, to be sure, gave the circuit court jurisdiction over Ampacet, and an appropriate money judgment could have been entered against it if a valid theory of recovery were advanced against it, but the common fund doctrine is not one of those theories.

Wolff's theories based on restitution do not suffer from these particular defects. He organizes those claims into two categories: restitution based on unjust enrichment and restitution based upon quasi-contract. In substance, Wolff argues that (a) he "performed" on behalf of not only the Lisk creditors, but for Ampacet as well, and that as a consequence Ampacet would be unjustly enriched if it were allowed to retain the benefit of its bankruptcy claims gratuitously; and (b) the courts should imply a contract between Ampacet and Wolff to allow him a recovery. Though Wolff treats the two as separate claims, they are historically identical: both "unjust enrichment" and "restitution" are terms descriptive of a form of recovery dependent on the existence of an independent theory sounding in either tort (for example, fraud) or contract (for example, quasi-contract). Wolff's theory is plainly grounded upon contract.

■ Wolff's arguments are unavailing because of the entire absence of any contractual basis for the claims; since he alleges no tortious

---

[3]According to the seventh circuit, there were "hundreds of deemed-filed creditors" who had claims restored as a result of Wolff's efforts (*In re Fesco Plastics Corp.*, 996 F.2d at 154). This suit was initially filed against only Ampacet and GE Capital Mortgage Services, another of the deemed-filed creditors of Fesco. Wolff settled with GE, which is not a party to this appeal. The record does not indicate what efforts, if any, were made against the remaining hundreds of creditors, other than the mention of Wolff's petition for fees in the bankruptcy court.

conduct, we shall focus only on the "quasi-contract" aspects of his theory. Contracts are recognized as bargained-for exchanges:

"A contract, by ancient definition, is 'an agreement between competent parties, upon a consideration sufficient in law, to do or not do a particular thing.' [Citation.]

\* \* \*

\*\*\* [A] subjective understanding is not requisite. It suffices that the conduct of the contracting parties indicates an agreement to the terms of the alleged contract." *Steinberg v. Chicago Medical School*, 69 Ill. 2d 320, 329, 331, 371 N.E.2d 634 (1977).

See also *Wagner Excello Foods, Inc. v. Fearn International, Inc.*, 235 Ill. App. 3d 224, 229, 601 N.E.2d 956 (1992) ("To be enforceable, a contract must show a manifestation of agreement between the parties"). In the context of this case, restitution and unjust enrichment must trace their origins to basic contract law concepts (*People ex rel. Hartigan v. E&E Hauling, Inc.*, 153 Ill. 2d 473, 497, 607 N.E.2d 165 (1992) ("The theory of unjust enrichment is based on a contract implied in law"); *Sobel v. Franks*, 261 Ill. App. 3d 670, 682-83, 633 N.E.2d 820 (1994)).

Wolff acknowledges that his entire performance for the Lisk creditors in this matter (appealing to the district court and then to the seventh circuit) was done without Ampacet's knowledge. He also admits that when he approached Ampacet to offer his services after he had revived the claims, it refused to hire him; indeed, Ampacet retained other counsel when it reinstated its claim in the bankruptcy court. Ampacet cannot be deemed to have in any way entered into a contractual relationship when it was ignorant of Wolff's performance, expressly rejected his attempt to have it retroactively validate that performance, and hired someone else instead.

■ We are further persuaded that the circuit court's judgment was correct in light of our supreme court's analysis in *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill. 2d 145, 545 N.E.2d 672 (1989). There, the court divided unjust enrichment cases into two categories: (a) those where the benefit plaintiff seeks to recover from the defendant originated with the plaintiff; and (b) those where the benefit plaintiff seeks has been transferred to defendant by a third party (131 Ill. 2d at 161). In this case, Wolff's claim falls in the second category: it was the decision of the bankrupt estate's trustee to reinstate the claims not only of the Lisk creditors, but those of all the deemed-filed creditors as well, and Wolff seeks payment from the sum transferred to Ampacet by the trustee.

The *HPI* court limited the recovery of an unjust enrichment derived from third parties to three situations:

"[C]ourts have found that the retention of the benefit would be unjust where (1) the benefit should have been given to the plaintiff, but the third party mistakenly gave it to the defendant instead [citation], (2) the defendant procured the benefit from the third party through some type of wrongful conduct [citation], or (3) the plaintiff for some other reason had a better claim to the benefit than the defendant." 131 Ill. 2d at 161-62.

None of these criteria is met here. Wolff does not claim that Ampacet's payment should have been given to him. We reiterate that he does not allege any wrongful conduct on Ampacet's part. Nor can Wolff assert a superior claim to the money; instead, at all times Wolff assumed the validity of Ampacet's claim. He thus cannot meet the test enunciated in *HPI*.

■ The logic employed in *HPI* eviscerates Wolff's quasi-contractual theory. "Quasi-contract" is a term of art for contracts implied in law (*Zadrozny v. City Colleges*, 220 Ill. App. 3d 290, 295, 581 N.E.2d 44 (1991); *Daley v. G'Sell*, 102 Ill. App. 3d 548, 551, 430 N.E.2d 556 (1981)). And, as noted, here there is no contract, implied or otherwise. There was no legally cognizable relationship between Wolff and Ampacet when Wolff performed for the Lisk creditors.[4] As such, there could be no quasi-contract upon which to base any recovery.

None of Wolff's theories survives scrutiny. The judgment of the circuit court must therefore be affirmed.

Affirmed.

HARTMAN, P.J., and DiVITO, J., concur.

---

[4]We recognize that a quasi-contract does not, by its nature, require express acceptance by the parties, but arises as a fictional implication of law. Nonetheless, the legal implication raised by the theory of quasi-contract is grounded upon the existence of a duty owed by the party to be charged under the quasi-contract (*Arthur Rubloff & Co. v. Drovers National Bank*, 80 Ill. App. 3d 867, 875, 400 N.E.2d 614 (1980) ("where there is an obligation or duty and receipt of a benefit related to such duty, the law may imply from the circumstances or the relation of the parties a promise to pay")). Here, there was simply no relationship between Ampacet and Wolff from which any duty could arise. As such there can be no quasi-contract.