(No. 88393.—

MORRIS B. CHAPMAN & ASSOCIATES, LTD., Appellee, v. JOHN KITZMAN *et al.*, Appellants.

*Opinion filed November 16, 2000.*

HARRISON, C.J., took no part.

RATHJE, J., dissenting.

William J. Knapp and Robert J. Evola, of Burroughs, Hepler, Broom, MacDonald, Hebrank & True, of Edwardsville, for appellants.

Morris B. Chapman and Terrence V. O'Leary, of Morris B. Chapman & Associates, Ltd., of Granite City, for appellee.

JUSTICE BILANDIC delivered the opinion of the court:

This action for attorney fees was filed in the circuit court of Madison County.

## BACKGROUND

Johnny Kitzman died in an excavation-related accident in Missouri. His widow, Karen, hired the law firm of Morris B. Chapman & Associates to pursue legal recourse. Karen agreed to pay Chapman one-third of any recovery as attorney fees. Chapman filed a wrongful death action in Missouri. According to Missouri law, decedent's heirs included his widow and his parents.

Chapman obtained an $800,000 settlement for the benefit of decedent's heirs after working on the case for three years. Chapman filed a petition in the Missouri circuit court for settlement approval and apportionment. Shortly before the hearing on the petition, decedent's parents, John and Edna Kitzman, retained separate counsel, John A. Kilo. The Kitzmans agreed to pay Kilo one-third of any recovery in excess of $100,000 as attorney fees. They intervened in the cause and participated in the settlement approval and apportionment hearing.

The Missouri court approved the settlement and entered an order distributing 86% ($688,000) to Karen and 14% ($112,000) to the Kitzmans. The court awarded Chapman a fee consisting of one-third of Karen's share ($227,040), but no part of the Kitzmans' share. The court awarded Kilo a fee consisting of one-third of the Kitzmans' share over $100,000 ($4,000).

The Missouri court based its attorney fee awards on a statutory provision that required the circuit court to order the claimant:

"To deduct and pay the expenses of recovery and collection of the judgment and the attorneys' fees as contracted, or if there is no contract, or if the party sharing in the proceeds has no attorney representing him before the rendition of any judgment or settlement, then the court may award the attorney who represents the original plaintiff such fee for his services, from such persons sharing in the proceeds, as the court deems fair and equitable under the circumstances." Mo. Rev. Stat. § 537.095(4)(2) (1986).

Given that Karen and the Kitzmans hired separate counsel for the hearing, the court interpreted this language as requiring it to award attorney fees pursuant to the existing contracts. The court therefore awarded no attorney fees out of the first $100,000 of the Kitzmans' share. The court acknowledged that it "seems unfair to permit potential wrongful death plaintiffs to rest on their oars until a settlement of a claim is achieved, and then appear with counsel so as to prevent the original plaintiff's fees from being a shared burden." Nonetheless, the court held, the statutory language requires this result. No appeal was taken.

One month later, Chapman filed the instant action against the Kitzmans in Illinois, requesting an award of reasonable attorney fees. Chapman's first amended complaint sought fees based on *quantum meruit* and the common fund doctrine.

The Kitzmans filed three separate motions to dismiss. They alleged that Chapman's claim is barred by the full faith and credit clause of the United States Constitution (U.S. Const., art. IV, § 1) as *res judicata*. They further alleged that the complaint fails to state a cause of action under Missouri law and, alternatively, under Illinois law. Lastly, the Kitzmans moved for sanctions against Chapman pursuant to Supreme Court Rule 137 (155 Ill. 2d R. 137). The pleadings disclosed that Chapman is an Illinois corporation with a law office in Illinois, and that the Kitzmans are Illinois residents.

The circuit court ruled that Chapman's action is not barred. The court, however, dismissed the *quantum meruit* count after Chapman verbally agreed to its dismissal. The court dismissed the common fund doctrine count, holding that the doctrine is not applicable in this case. Lastly, the court denied the Kitzmans' motion for sanctions.

The appellate court affirmed in part and reversed in part, and remanded the cause for further proceedings. 307 Ill. App. 3d 92. Applying Missouri law, the court agreed that Chapman's action is not barred as *res judicata*. The court thus agreed that Chapman's action is not barred by the full faith and credit clause. The court nonetheless reversed the dismissal of the common fund doctrine count. After conducting a conflict-of-laws analysis, the court applied Illinois substantive law with respect to the common fund doctrine and held that count II of Chapman's complaint survives the Kitzmans' motions to dismiss. The court affirmed the denial of sanctions.

The Kitzmans' initial petition for leave to appeal was returned to them because it violated the page limitation set forth in Supreme Court Rule 315(c) (177 Ill. 2d R. 315(c)). After this violation was remedied, this court granted the Kitzmans leave to file their petition for leave to appeal *instanter*. See 177 Ill. 2d R. 315(b). We subsequently allowed the Kitzmans' petition for leave to appeal as a matter of right. 134 Ill. 2d R. 317; see *Schoeberlein v. Purdue University*, 129 Ill. 2d 372, 376 (1989). This court has jurisdiction over the cause.

## ANALYSIS

### I

The Kitzmans contend that the full faith and credit clause bars this action because the Missouri court's fee apportionment order is *res judicata* as to Chapman's claim. For this reason, they argue, the circuit court should have dismissed Chapman's complaint.

As an initial matter, we generally apply the law of the forum, *i.e.*, Illinois law, with regard to matters of pleading and how the litigation shall be conducted. See *Nelson v. Hix*, 122 Ill. 2d 343, 346-47 (1988); Restatement (Second) of Conflict of Laws §§ 122, 127 (1971); see generally 16 Am. Jur. 2d *Conflict of Laws* §§ 153, 163 (1998) (noting that, in matters of pleading and how litigation is conducted, the law of the forum state governs). In Illinois, section 2—619(a)(4) of the Code of Civil Procedure permits the involuntary dismissal of an action where it is "barred by a prior judgment." 735 ILCS 5/2—619(a)(4) (West 1996). This provision allows a party to raise the affirmative defense of *res judicata*. Where, as here, there is no issue of material fact, an appellate court conducts *de novo* review and determines whether dismissal by reason of *res judicata* is proper as a matter of law. See *Epstein v. Chicago Board of Education*, 178 Ill. 2d 370, 383 (1997); *Torcasso v. Standard Outdoor Sales, Inc.*, 157 Ill. 2d 484, 486, 491 (1993).

According to the United States Constitution, "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." U.S. Const., art. IV, § 1. This clause requires Illinois courts to give the judgment of a sister state at least the *res judicata* effect that the sister state rendering the judgment would give to it. *Durfee v. Duke*, 375 U.S. 106, 109, 11 L. Ed. 2d 186, 190, 84 S. Ct. 242, 244 (1963); *Hays v. Louisiana Dock Co.*, 117 Ill. App. 3d 512, 517 (1983); see *Underwriters National Assurance Co. v. North Carolina Life & Accident & Health Insurance Guaranty Ass'n*, 455 U.S. 691, 71 L. Ed. 2d 558, 102 S. Ct. 1357 (1982). Hence, we must apply Missouri law to determine whether Chapman's claim against the Kitzmans is barred as *res judicata* by the Missouri court judgment.

Pursuant to Missouri law, the following "four identi-

ties" must appear for *res judicata* to adhere: (1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of the persons and parties to the action; and (4) identity of the quality of the person for or against whom the claim is made. *King General Contractors, Inc. v. Reorganized Church of Jesus Christ of Latter Day Saints*, 821 S.W.2d 495, 501 (Mo. 1991) (*en banc*). The third identity, that of the parties to the action, is dispositive here.

Chapman was not a party to the wrongful death action. Rather, Chapman was the law firm representing a party. As the Missouri Court of Appeals explained in an attorney fee dispute arising out of a wrongful death action,

> "[T]he attorneys were not parties to the underlying litigation. Res judicata bars only claims by parties and privies. *** The concept of privity for purposes of res judicata connotes interests so closely related that the party sought to be barred may be said to have had a day in court. The interest of an attorney with regard to a fee claim is not of this character." *Floyd v. Shaw*, 830 S.W.2d 564, 565 (Mo. App. 1992).

Accordingly, applying Missouri law, we conclude that *res judicata* is not a bar to Chapman's claim for fees.

On a related note, the Kitzmans next suggest that Chapman is collaterally estopped from pursuing its claim for attorney fees. Collateral estoppel is also known as issue preclusion. To determine whether issue preclusion obtains, Missouri courts apply a somewhat different test than the one set forth above. *King General Contractors, Inc.*, 821 S.W.2d at 500-01. Nevertheless, issue preclusion is never applied against a party who could not appeal from the earlier judgment as a matter of law. Restatement (Second) of Judgments § 28(1), at 273; Comment *a*, at 274 (1982); see *King General Contractors, Inc.*, 821 S.W.2d at 501-02 (following Restatement (Second) of Judgments); see generally K. Moore, Collateral Attack on

Subject Matter Jurisdiction: A Critique of the *Restatement (Second) of Judgments*, 66 Cornell L. Rev. 534, 560 & n.125 (1981) (discussing the importance of this exception). The question thus arises whether Chapman could have appealed from the Missouri court judgment.

In Missouri, appellate review of an order distributing a wrongful death settlement must be sought pursuant to section 512.020 of the Missouri Code of Civil Procedure (Mo. Rev. Stat. § 512.020 (1993)). Section 512.020 limits the right to an appeal only to parties to the suit, which does not include a party's law firm. In a similar context, the Missouri Court of Appeals explained:

> "The right to appeal is purely statutory. [Citations.] Section 512.020 provides that any 'party to a suit aggrieved by any judgment of any trial court in any civil case ... may take his appeal to a court having appellate jurisdiction.' By its express terms, the statute limits appeals; only a 'party to a suit' may appeal. The [law] firm was not a party. Therefore, the [law] firm has no statutory right to appeal."
> *Oberhellmann v. Oberhellmann*, 950 S.W.2d 487, 488 (Mo. App. 1997).

Because the Chapman law firm was not a party to the wrongful death suit, it was not allowed to appeal from the Missouri court judgment. Issue preclusion, therefore, does not apply.

In summary, there is no bar to Chapman's action against the Kitzmans for attorney fees.

## II

The Kitzmans next argue that Chapman's complaint should be dismissed because it fails to state a cause of action pursuant to the common fund doctrine. According to the Kitzmans, the common fund doctrine cannot be used to obtain attorney fees in a wrongful death action. The Kitzmans contend that we should apply the substantive law of Missouri in resolving this issue. Chapman counters that the substantive law of Illinois applies. If Illinois substantive law applies, the Kitzmans maintain, Chapman's complaint still fails for legal insufficiency.

Before proceeding, we note that the law of the forum state governs matters of pleading, including the rules of pleading and sufficiency. See *Nelson*, 122 Ill. 2d at 346-47; Restatement (Second) of Conflict of Laws §§ 122, 127 (1971); see generally 16 Am. Jur. 2d *Conflict of Laws* § 163, at 171 (1998) (explaining rule). In Illinois, the standard of review on appeal from a motion to dismiss pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1996)) is whether the complaint alleges sufficient facts which, if proved, would entitle the plaintiff to relief. *Charles v. Seigfried*, 165 Ill. 2d 482, 485-86 (1995). Our review is *de novo*.

A conflict exists on this issue between the substantive law of Missouri and Illinois. If Missouri law applies, Chapman's common-fund-doctrine claim fails as a matter of law. This is because a Missouri statute precludes the use of the common fund doctrine to obtain attorney fees in a wrongful death action where, as here, all the attorneys had existing fee contracts with their clients. *Keene v. Wilson Refuse, Inc.*, 788 S.W.2d 324, 327 (Mo. App. 1990) (interpreting the same statutory provision at issue here). If, on the other hand, Illinois law applies, Chapman's complaint survives the dismissal motion because, as later explained, it sufficiently states a cause of action pursuant to the common fund doctrine. We must therefore decide whether the substantive law of Missouri or Illinois governs this case.

In deciding whose substantive law to apply, we look to our own choice-of-law rules. *Esser v. McIntyre*, 169 Ill. 2d 292, 297 (1996). Ordinarily, Illinois follows the Restatement (Second) of Conflict of Laws (1971) in making choice-of-law decisions. Section 6 of that Restatement sets forth several general factors that courts consider in doing so, the following of which are relevant here: "the basic policies underlying the particular field of law"; "the relevant policies of other interested states and the rela-

tive interests of those states in the determination of the particular issue"; and "the relevant policies of the forum." Restatement (Second) of Conflict of Laws § 6(2), at 10 (1971); see *Esser*, 169 Ill. 2d at 299 n.1 (utilizing relevant principles in section 6(2)); *Nelson*, 122 Ill. 2d at 350-51 (same).

Consideration of the general factors of section 6 supports the application of Illinois law. We first assess the basic policies underlying the particular field of law. The basic policy underlying the common fund doctrine is the prevention of unjust enrichment. See *Scholtens v. Schneider*, 173 Ill. 2d 375, 385 (1996); *Jesser v. Mayfair Hotel, Inc.*, 360 S.W.2d 652, 661 (Mo. 1962). As this court stated, "The underlying justification for reimbursing attorneys from a common fund, as explained by the United States Supreme Court in three early cases, is that, unless the costs of litigation are spread to the beneficiaries of the fund, they will be unjustly enriched by the attorney's efforts. [Citations.]" *Scholtens*, 173 Ill. 2d at 385. This underlying policy against unjust enrichment can be fulfilled in this case only by an application of Illinois law. Thus, this factor favors application of Illinois law.

We next consider the relevant policies of Missouri and the relative interests of Missouri in the determination of this particular issue. The public policy of a state may be sought in its constitution, legislative enactments and judicial decisions. See *Roanoke Agency, Inc. v. Edgar*, 101 Ill. 2d 315, 327 (1984). The Missouri legislature has prescribed by statute how attorney fees are to be awarded, as earlier quoted. On the one hand, the Missouri statute promotes equitable fee awards. Where a party sharing in a judgment or settlement is not represented by counsel, it affords the trial court the discretion to award the attorney who secured the proceeds a fair and equitable fee from that party's share. On the other hand, the statute promotes inequitable fee apportion-

ment and unjust enrichment in certain circumstances. Where a party sharing in the proceeds hires counsel *only after* a different attorney has already secured the proceeds, the statute removes the court's discretion to award fees by requiring the court to award fees "as contracted." Thus, the statute operates unjustly to reward a party for doing nothing until a judgment or settlement is achieved, and then hiring counsel. The late hiring of counsel relieves the party from paying any portion of the fees of the original attorney, even though that attorney secured the proceeds benefitting the party.

The present case exemplifies the injustice inherent in the Missouri statute. Chapman alone pursued this case for longer than three years before securing an $800,000 settlement for the benefit of all the heirs, including the Kitzmans. Yet the Missouri statute required the Kitzmans to pay Chapman nothing because, after Chapman secured the settlement, the Kitzmans entered into a written contract with separate counsel to represent them at the apportionment phase. Given the conflicting results that may obtain under the Missouri statute, we are not able to discern what the relevant policies and interests of Missouri are with respect to this particular issue. The Missouri circuit court that denied Chapman fees expressly noted the unfairness inherent in the statute's operation under these facts. This factor thus disfavors the application of Missouri law.

The relevant policies of the forum must be considered as well. The public policy of Illinois may be sought in our judicial decisions and legislative enactments, as well as our constitution. See *Roanoke Agency, Inc.*, 101 Ill. 2d at 327. Decisions of this court express a public policy against unjust enrichment in this context. See *Scholtens*, 173 Ill. 2d at 385; *Brundidge v. Glendale Federal Bank, F.S.B.*, 168 Ill. 2d 235, 238 (1995). As to legislative enactments, the parties have not cited and our research has not

disclosed any Illinois statute that precludes application of the common fund doctrine under these facts. Therefore, the public policy of Illinois favors the application of Illinois law.

In addition to the broad general factors of section 6, the Second Restatement of Conflict of Laws contains guidance for more specific problems of determining which forum's law to apply. Section 221 is applied to the narrow class of claims of restitution and unjust enrichment. Restatement (Second) of Conflict of Laws § 221, Comment *a*, at 728 (1971). Because the common fund doctrine arises out of the equitable theory of unjust enrichment (see *Scholtens*, 173 Ill. 2d at 385; *Jesser*, 360 S.W.2d at 661), we also look to that section in resolving which forum's law to apply in the present case. Section 221 provides:

"(1) In actions for restitution, the rights and liabilities of the parties with respect to the particular issue are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place where a relationship between the parties was centered, provided that the receipt of enrichment was substantially related to the relationship,

(b) the place where the benefit or enrichment was received,

(c) the place where the act conferring the benefit or enrichment was done,

(d) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(e) the place where a physical thing, such as land or a chattel, which was substantially related to the enrichment, was situated at the time of the enrichment.

These contacts are to be evaluated according to their relative importance with respect to the particular issue."

Restatement (Second) of Conflict of Laws § 221, at 727 (1971).

Here, consideration of section 221 supports the application of Illinois substantive law to this dispute. We find it significant that Chapman is an Illinois corporation with its law office in Illinois, and that the Kitzmans are Illinois residents. Furthermore, Illinois is the place where the relationship between the parties is centered with regard to the pertinent issue of attorney fees. There also is no dispute that Chapman performed many of its legal services in Illinois, which conferred enrichment on the Kitzmans. Illinois, therefore, has the most significant relationship to the parties and the issue at bar. We acknowledge that Missouri is the place where the Kitzmans' enrichment was ultimately received, given that the underlying lawsuit was filed and concluded in a Missouri court. We further acknowledge that Chapman performed some of its legal services in Missouri, which conferred enrichment on the Kitzmans. These latter points, however, do not outweigh the significant factors favoring the application of Illinois law.

In conclusion, the factors of both section 6 and section 221 support the application of Illinois law. We thus apply the substantive law of Illinois regarding the common fund doctrine.

Illinois generally follows the "American Rule": absent statutory authority or a contractual agreement between the parties, each party to litigation must bear its own attorney fees and costs, and may not recover those fees and costs from an adversary. *Scholtens v. Schneider*, 173 Ill. 2d 375, 384 (1996); *Saltiel v. Olsen*, 85 Ill. 2d 484, 488-89 (1981).

The common fund doctrine does not authorize a party to shift fees to an adversary, but rather authorizes the spread of fees among those who benefitted from the litigation. The doctrine permits a party who creates, preserves, or increases the value of a fund in which oth-

ers have an ownership interest to be reimbursed from that fund for litigation expenses incurred, including counsel fees. *Scholtens*, 173 Ill. 2d at 385. The litigant or lawyer who recovers a common fund for the benefit of others is entitled to a reasonable attorney fee from the fund as a whole. *Scholtens*, 173 Ill. 2d at 385, quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 62 L. Ed. 2d 676, 681, 100 S. Ct. 745, 749 (1980). If the costs of litigation are not spread to the beneficiaries of the fund, they will be unjustly enriched by the attorney's efforts. *Scholtens*, 173 Ill. 2d at 385.

The Kitzmans argue that, under Illinois law, the common fund doctrine cannot be applied to this case for three reasons. First, they claim that Illinois courts have limited application of the doctrine to only class actions and insurance subrogation cases.

We reject this contention. We consider it well established that the common fund doctrine "has been applied in many types of cases covering a large range of civil litigation," not just to class actions and insurance subrogation cases. *Scholtens*, 173 Ill. 2d at 388 (and authorities cited therein); R. Rossi, Attorneys' Fees §§ 6.10 through 6.21 (2d ed. 1995 & Supp. 2000) (discussing many types of cases in which doctrine has been applied). Whether the doctrine applies in a particular case is not determined by a label, but rather by a proper understanding of the doctrine and its limitations. See generally R. Rossi, Attorneys' Fees §§ 6.1 to 6.9 (2d ed. 1995 & Supp. 2000) (explaining doctrine and its limitations).

In support of their position, the Kitzmans quote from a federal appeals court decision, which states that Illinois case law "has restricted the application of the fund doctrine to class actions and insurance subrogation cases." *McKee-Berger-Mansueto, Inc. v. Board of Education of the City of Chicago*, 691 F.2d 828, 835 (7th Cir. 1982); see also *Insurance Co. of North America v. Norton*, 716 F.2d

1112, 1117 (7th Cir. 1983). We disagree with this characterization of Illinois law. The only case cited by the federal court to support this statement was *Maynard v. Parker*, 54 Ill. App. 3d 141 (1977), *aff'd*, 75 Ill. 2d 73 (1979). A reading of this court's decision in *Maynard*, however, reveals the complete absence of any suggestion that the common fund doctrine is limited to only "class actions" and "insurance subrogation cases." See *Maynard*, 75 Ill. 2d 73. In fact, those phrases never appear in the opinion. *Maynard* simply held that the common fund doctrine did not apply against a hospital where the attorney seeking fees represented a patient who was indebted to the hospital for medical services, and a statute both provided for and limited the amount of that hospital's lien. *Maynard*, 75 Ill. 2d 73. In those circumstances, the hospital was not unjustly enriched by the attorney's services. Moreover, the appellate court in *Maynard* did not hold that the doctrine is limited to only class actions and insurance subrogation cases. See *Maynard*, 54 Ill. App. 3d 141, *aff'd*, 75 Ill. 2d 73.

Second, the Kitzmans submit that the common fund doctrine cannot be utilized outside of the subrogation context unless the court has a full, segregated fund under its control. They correctly note that there is a conflict in our appellate court as to whether this requirement exists. The Fifth District of the appellate court in this case rejected the requirement, whereas the First District has embraced it (*Wolff v. Ampacet Corp.*, 284 Ill. App. 3d 824, 828-29 (1st Dist. 1996); *City of Chicago v. Korshak*, 276 Ill. App. 3d 597, 602-03 (1st Dist. 1995)).

The Supreme Court of the United States rejected a similar requirement in a leading case applying the common fund doctrine, *Sprague v. Ticonic National Bank*, 307 U.S. 161, 83 L. Ed. 1184, 59 S. Ct. 777 (1939). The plaintiff in *Sprague* did not bring a fund into court in which others could participate. The fund, however,

existed and was identifiable. It consisted of earmarked bonds in the trust department of a bank in receivership under the protection of a federal court. The Court held:

"Whether one *** formally makes a fund available for others may, of course, be a relevant circumstance in making the fund liable for his costs in producing it. But when such a fund is for all practical purposes created for the benefit of others, *** the absence of *** the creation of a fund *** hardly touch[es] the power of equity in doing justice as between a party and the beneficiaries of his litigation." *Sprague*, 307 U.S. at 167, 83 L. Ed. at 1187, 59 S. Ct. at 780.

Following *Sprague*, the United States Court of Appeals for the Fifth Circuit also declined to require that a segregated fund be under court control before the common fund doctrine may be applied. *In re Air Crash Disaster at Florida Everglades on December 29, 1972*, 549 F.2d 1006, 1018 (5th Cir. 1977). The court explained: "In the present case there is not a fund in the sense of identified items already in the hands of a court appointee, but this is not a necessity. Determination of whether a fund exists is a combination of traditional and pragmatic concepts centering around the power of the court to control the alleged fund." *In re Air Crash Disaster at Florida Everglades on December 29, 1972*, 549 F.2d at 1018. Thus, after concluding that a fund did exist as a practical matter, the court held that attorney fees could be awarded pursuant to the common fund doctrine. *In re Air Crash Disaster at Florida Everglades on December 29, 1972*, 549 F.2d at 1018-21.

As noted, the First District of the appellate court has held that the common fund doctrine can never be applied outside the subrogation context unless the court has a full, segregated fund under its control. *Wolff*, 284 Ill. App. 3d at 828-29; *Korshak*, 276 Ill. App. 3d at 603. We reject this view. The existence of a full, segregated fund within the court's control is not a universal prerequisite to application of the common fund doctrine. See *Taylor v.*

*State Universities Retirement System*, 203 Ill. App. 3d 513, 520-21 (1990). Rather, as explained by the decisions discussed above, the doctrine may be applied where a fund, for all practical purposes, has been created for the benefit of others.

The First District based its holding on three decisions of this court, as well as some appellate cases interpreting those decisions. As we discuss below, however, no decision of this court has placed such a restriction on application of the common fund doctrine. Those decisions are distinguishable as falling outside the scope of the common fund doctrine.

In *Hamer v. Kirk*, 64 Ill. 2d 434 (1976), the petitioner sued several governmental entities on behalf of a class of taxpayers. The petitioner obtained partial relief in that the Lake County board of review was ordered to equalize the level of assessment of property for each township in the county. The petitioner then requested that the court enter an order against the defendants for attorney fees and expenses. This court held that attorney fees could not be awarded under the common fund doctrine because "no such funds exist." *Hamer*, 64 Ill. 2d at 440.

To elaborate, in *Hamer* there simply was no fund, either in court control or as a practical matter. The petitioner did not obtain any existing or identifiable monetary award for the class. The lack of a fund is further evidenced by the fact that the petitioner was seeking to collect attorney fees from his adversary, not from the beneficiaries of the attorney's work. *Hamer*, 64 Ill. 2d at 436; see *Saltiel*, 85 Ill. 2d at 489 (explaining that attorney fees are not charged against an adversary in fund cases); *Ryan v. City of Chicago*, 274 Ill. App. 3d 913, 925 (1995) (same).

In *Hoffman v. Lehnhausen*, 48 Ill. 2d 323 (1971), a class of taxpayers sued various governmental officials seeking to enjoin the enforcement of a statute that

granted a certain property tax exemption to persons age 65 or older. The taxpayers obtained relief in that the statute was declared unconstitutional and its enforcement enjoined. The taxpayers then sought an award of attorney fees. This court held that attorney fees could not be awarded under the common fund doctrine because, among other reasons, there was "[n]o fund." *Hoffman*, 48 Ill. 2d at 329. Like in *Hamer*, the taxpayers did not obtain any existing or identifiable monetary award for the class. Their success, rather, was in enjoining a statute as unconstitutional.

In *Rosemont Building Supply, Inc. v. Illinois Highway Trust Authority*, 51 Ill. 2d 126 (1972), the plaintiffs filed a suit against the Illinois Highway Trust Authority and various governmental officials on behalf of a class of taxpayers. The plaintiffs successfully challenged as unconstitutional a statute that empowered the Trust Authority to act. The plaintiffs then sought an award of attorney fees from the defendants. This court held that attorney fees could not be awarded under the common fund doctrine because "no fund" was involved. *Rosemont Building Supply*, 51 Ill. 2d at 130. Again, the plaintiffs did not obtain any existing or identifiable monetary award for the class. Their success consisted in having a statute declared unconstitutional. The fact that the plaintiffs were seeking to collect attorney fees from their adversaries, not from the beneficiaries of the attorney's work, also shows the inapplicability of the common fund doctrine. See generally *Rosemont Building Supply*, 51 Ill. 2d at 128; see also *Saltiel*, 85 Ill. 2d at 489; *Ryan*, 274 Ill. App. 3d at 925.

Our review of *Hamer*, *Hoffman* and *Rosemont Building Supply* persuades us that this court has never restricted application of the common fund doctrine in the manner asserted by the Kitzmans. The common fund doctrine was not applicable in those cases, mainly because there was no fund.

The present case, in contrast, falls squarely within the doctrine. Chapman alone pursued this case for longer than three years before securing an $800,000 settlement for the benefit of all the heirs, including the Kitzmans. The Kitzmans were awarded $112,000 as a result of Chapman's work. The settlement constitutes a common fund, and the Kitzmans received a share of that fund. The Kitzmans maintain that the doctrine cannot be applied to them because the fund is not currently controlled by Illinois courts. We disagree. We hold that the mere fact that the fund is not within the actual control of the Illinois courts is not determinative of Chapman's claim.

The Kitzmans' third contention is that the common fund doctrine can never be used to obtain attorney fees in a wrongful death action. The Kitzmans do not offer any argument or authority in support of this position, and we are aware of none. Our research has not disclosed any Illinois statute or case that precludes application of the common fund doctrine to wrongful death cases. Accordingly, we reject this contention.

The Kitzmans raise no further challenge to the application of the common fund doctrine in this case. Therefore, we affirm the holding of the appellate court that Chapman's complaint sufficiently states a cause of action pursuant to the doctrine.

### III

The Kitzmans last assert that the circuit court erred in denying their motion for sanctions, filed pursuant to Supreme Court Rule 137 (155 Ill. 2d R. 137). They maintain that Chapman should be sanctioned for pursuing a claim that was barred by the full faith and credit clause and the doctrine of *res judicata*. According to the Kitzmans, Chapman has provided no good-faith argument that its claim is not barred.

Rule 137 authorizes sanctions against an attorney for pursuing false or frivolous lawsuits. See *Cult Awareness*

*Network v. Church of Scientology International*, 177 Ill. 2d 267, 279 (1997). The decision whether to impose sanctions under Rule 137 is committed to the sound discretion of the circuit court, and that decision will not be reversed on appeal absent an abuse of discretion. *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 487 (1998).

Chapman has prevailed in its argument that no bar exists to its claim. Given Chapman's success on the merits of this issue, its position cannot be deemed frivolous. Thus, the circuit court's refusal to impose sanctions is not an abuse of discretion.

As a final matter, taken with the case was the Kitzmans' motion to recall the mandate of the appellate court, which was issued on October 20, 1999. We hereby allow this motion. See 155 Ill. 2d R. 368(c).

CONCLUSION

For the reasons stated, the judgment of the appellate court is affirmed.

*Affirmed.*

CHIEF JUSTICE HARRISON took no part in the consideration or decision of this case.

JUSTICE RATHJE, dissenting:

I agree with the majority's analysis and conclusion in parts I and III. I disagree, however, with the majority's analysis in part II. Accordingly, I respectfully dissent.

The majority cites to section 6 of the Restatement (Second) of Conflict of Laws and identifies three factors that are relevant to the conflict of laws issue. 193 Ill. 2d at 569. One relevant factor is ignored by the majority— "the protection of justified expectations." Restatement (Second) of Conflict of Laws § 6(2)(d), at 10 (1971). The balancing of this factor along with the three mentioned by the majority requires this court to apply Missouri's substantive law on the issue of the distribution of attorney fees.

The first factor addressed by the majority is " 'the basic policies underlying the particular field of law.' " 193 Ill. 2d at 569, quoting Restatement (Second) of Conflicts of Law § 6(2)(e), at 10 (1971). The majority begins by discussing the policy behind the common fund doctrine and then states that, because Illinois uses the common fund doctrine in wrongful death cases and Missouri does not, Illinois law should apply. In other words, the majority designates the Illinois common fund doctrine as the "particular field of law" and concludes that the policies underlying the Illinois law more clearly fulfill the policies of the "particular field of law." The majority's circular logic mischaracterizes the issue. The appropriate question under this factor is which state's law better serves the policies underlying the distribution of attorney fees. This question is a much closer one than the majority claims. On one hand, as the majority correctly points out, the Illinois common fund doctrine prevents attorneys who did not participate as fully in the litigation from being unjustly enriched in the dispensation of attorney fees. 193 Ill. 2d at 569. On the other hand, as the majority fails to point out, under Missouri law, each litigant has the freedom to choose which attorney collects the fees associated with the litigant's claim. Both states' laws demonstrate clear policies that relate to the basic policies of attorney fee distribution—fairness and client choice of attorney.

Second, the majority addresses " 'the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue.' " 193 Ill. 2d at 568-69, quoting Restatement (Second) of Conflict of Laws § 6(2), at 10 (1971). Again assuming that the particular field of law is the common fund doctrine, the majority argues that the statute creates unjust results and that therefore the factor "disfavors the application of Missouri law." 193 Ill. 2d at 570.

The majority fails to even discuss the relevant interests of Missouri in the discussion of this factor. Missouri has a substantial interest in this case. The cause of action arose in Missouri, and some of the most relevant work on the action was done there. In fact, Chapman would not even *have* a separate cause of action for the disbursement of attorney fees if this case had not been filed in Missouri. See 193 Ill. 2d at 567. As discussed above, Missouri also has a clear policy which, while different than the Illinois policy, does not offend it. This factor weighs in favor of Missouri.

The third factor addressed is the " 'relevant policies of the forum.' " 193 Ill. 2d at 570, quoting Restatement (Second) of Conflict of Laws § 6(2)(b), at 10 (1971). This factor is discussed throughout this section of the majority opinion. The majority is correct that Illinois law would apply the common fund doctrine and that the policy underlying that law is against unjust enrichment. This does not mean, however, that a state that does not apply the common fund doctrine has a policy *for* unjust enrichment. Rather, the Missouri legislators have determined that the policy of attorney choice is more important to their state than the policy against unjust enrichment. Illinois has an obvious policy against unjust enrichment, and, although the Missouri *policy* does not offend the Illinois policy, the Missouri *law* clearly does. Therefore, this factor weighs in favor of Illinois.

A fourth factor that the majority does not consider is " 'the protection of justified expectations.' " Restatement (Second) of Conflict of Laws § 6(2)(d), at 10 (1971). This factor is explained in the comments to the Restatement (Second) as follows:

> "This is an important value in all fields of law, including choice of law. Generally speaking, it would be unfair and improper to hold a person liable under the local law of one state when he had justifiably molded his conduct to conform to the requirements of another state." Restate-

ment (Second) of Conflict of Laws § 6(2)(g), Comments, at 15 (1971).

In this case, the underlying action arose in Missouri, and, most importantly, Chapman filed this action in Missouri. He is presumed to know how attorney fees are disbursed in wrongful death actions in Missouri. The attorney *clearly* should have expected Missouri law to apply, as should all of the parties. The only person who might have any claim to expect Illinois to govern attorney fees is Karen, because her relationship with Chapman was initiated in Illinois. Karen, however, is not a party to this action, and the attorney fees for her portion of the settlement are not at issue. The Kitzmans, by contrast, had no relationship with Chapman until he filed the wrongful death action in Missouri. The Kitzmans contracted with their attorney, who agreed to be paid one-third of any recovery in excess of $100,000. This contract clearly demonstrates that they expected Missouri law to apply, and the fact that Chapman filed the lawsuit in Missouri renders their expectation justified. Consequently, this factor overwhelmingly favors the application of Missouri law.

Under these four factors, Missouri law applies. As a result, the common fund doctrine is not applicable. I would therefore reverse the appellate court as to this issue.