THIRD DIVISION
MARCH 26, 2008

1-06-0096

| | | |
|---|---|---|
| PHYLLIS LANDAU, Individually and on Behalf of all Others Similarly Situated, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) | No. 04 CH 14998 |
| CNA FINANCIAL CORPORATION, and CONTINENTAL CASUALTY COMPANY, a wholly Owned Subsidiary of CNA Financial Corporation, | ) ) ) ) | Honorable Martin S. Agran |
| Defendants-Appellees. | ) | Judge Presiding. |

JUSTICE CUNNINGHAM delivered the opinion of the court:

The plaintiff, Phyllis Landau (Landau), on behalf of herself and a purported nationwide class, filed suit in the circuit court of Cook County against the defendants CNA Financial Corporation and CNA's wholly owned subsidiary Continental Casualty Company (collectively referred to as CNA), for alleged deceptive business practices and resulting damages in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 (West 2002)). For purposes of this analysis, all references to CNA include CCC, which is also a named defendant. Landau now argues that the trial court erred by granting the CNA's motion to dismiss pursuant to section 2-615 of the Illinois Code of Civil Procedure (735 ILCS 5/2-615 (West 2002)), finding that Landau could not sue under the Consumer Fraud Act. We affirm the judgment of the circuit court.

BACKGROUND

In November 1996, Landau, a Pennsylvania resident, met with representatives of CNA in her home and later entered into a contract with CNA for long-term-care insurance (LTCI). The insurance policy provided coverage for long-term care for a fixed premium for the life of the policy.

Marketing materials provided to Landau stressed the urgency to buy the policy earlier in life to ensure a lower fixed premium and long-term coverage. On September 4, 2003, after the insurance policy had been in effect for almost seven years, CNA's Tennessee office notified Landau by letter that she would have to pay a significant increase in premium to continue her insurance coverage at the current benefits level. Landau was given the option of cancelling her coverage. The letter also informed Landau that the Pennsylvania Department of Insurance had been notified of the change in the LTCI policy terms in accordance with Pennsylvania law.

In September 2004, Landau filed this action in the circuit court of Cook County against CNA on behalf of herself and a nationwide class alleging that through uniform deceptive sales and marketing practices designed and implemented from CNA's headquarters in Illinois, CNA misled the plaintiffs into purchasing CNA's LTCI. Landau alleged that most of the circumstances related to this alleged fraudulent transaction occurred in Illinois.

In January 2005, Landau filed an amended complaint and CNA subsequently filed a motion to dismiss and a motion for summary judgment, respectively, pursuant to sections 2-615 and 2-1005 of the Code of Civil Procedure (735 ILCS 5/2-615, 2-1005 (West 2002)), alleging that Landau failed to plead with specificity as required by the Code of Civil Procedure and that Landau lacked proper standing to bring her claims under the Consumer Fraud Act. The trial court granted CNA's motion to dismiss without prejudice, finding that Landau failed to plead with sufficient specificity. On June 13, 2005, Landau filed a second amended complaint which contained substantially the same allegations as the prior complaint. CNA filed a motion to dismiss that second amended complaint on the same basis as its prior motion. CNA alleged that the pleadings lacked specificity and that

Landau lacked standing to bring the action under the Consumer Fraud Act. On December 8, 2005, the trial court dismissed the second amended complaint with prejudice. The trial court found that Landau lacked standing to bring the complaint in Illinois because the majority of circumstances related to the transaction occurred outside of Illinois. This appeal followed.

ANALYSIS

In reviewing an appeal from a motion to dismiss pursuant to section 2-615 of the Code of Civil Procedure, the reviewing court must determine "whether the complaint alleges sufficient facts which, if proved, would entitle the plaintiff to relief." Morris B. Chapman & Associates, Ltd. v. Kitzman, 193 Ill. 2d 560, 568, 739 N.E.2d 1263, 1269 (2000). The standard of review of such a dismissal is *de novo*. Morris B. Chapman & Associates, Ltd., 193 Ill. 2d at 568, 739 N.E.2d at 1269.

On appeal the parties frame this as a question of standing, however, the real issue is whether Landau, a Pennsylvania resident, may bring an action under the Consumer Fraud Act under these facts. The Consumer Fraud Act is a statute without extraterritorial effect; "[t]he [Illinois] General Assembly did not intend the *** Act to apply to fraudulent transactions that take place outside Illinois." Avery v. State Farm Mutual Automobile Insurance Co., 216 Ill. 2d 100, 185, 835 N.E.2d 801, 853 (2005). The test is simply stated in Avery as follows: do the "circumstances that relate to the disputed transaction occur primarily and substantially in Illinois." Avery, 216 Ill. 2d at 187, 835 N.E.2d at 854. This test has recently been reaffirmed by our supreme court in Barbara's Sales, Inc. v. Intel Corp., 227 Ill. 2d 45, ___, 879 N.E.2d 910, 919 (2007). The supreme court held that the "Illinois Consumer Fraud Act applies only to fraudulent transactions which take place 'primarily and substantially' in Illinois" and therefore precluded reliance on transactions occurring entirely

outside Illinois to determine whether Illinois law applied to the case. However, that case was primarily concerned with choice-of-law standards, a different issue than the one in this case. The main question to be resolved in the case before us is whether the transaction which gave rise to the lawsuit occurred "primarily and substantially" in Illinois. Avery provides a framework to assist in this determination.

In Avery, the plaintiff sued State Farm Insurance Company for multiple claims including misrepresentation or failure to disclose the use of non-original equipment parts for repairs of the insured vehicles. The plaintiff in Avery attempted to sue under the Consumer Fraud Act. The Illinois Supreme Court held that while the place where a company's policy is created or where a form document is drafted may be a relevant factor to consider in determining the location of a consumer transaction, other factors controlled. The court held that the plaintiff's allegation that the fraudulent scheme was disseminated from Illinois was insufficient to sustain as a complaint under the Consumer Fraud Act. Avery, 216 Ill. 2d at 187-89, 835 N.E.2d at 854-55. The plaintiff in Avery resided in and garaged his car (the insured subject matter) in Louisiana. When the vehicle needed repair, the estimate was written in Louisiana and the brochure regarding replacement parts was received in Louisiana. The repair of the car took place in Louisiana and any alleged damages occurred in Louisiana. There was no evidence that the plaintiff in Avery talked to any State Farm employees in Illinois, and all of his contact with State Farm happened via Louisiana representatives. The Illinois Supreme Court concluded that the plaintiff in Avery had no cognizable cause of action under the Consumer Fraud Act because the overwhelming majority of circumstances that related to the claim occurred outside of Illinois. Avery, 216 Ill. 2d at 188, 835 N.E.2d at 854.

In the case at hand, Landau was a resident of a state other than Illinois and bought her policy in her home state of Pennsylvania. Although she alleged that she was deceived by marketing material conceived in Illinois, her contact with company representatives occurred only in Pennsylvania. Similar to the plaintiff in <u>Avery</u>, Landau also never spoke with representatives in Illinois about her LTCI policy. Specifically, Landau resided in Pennsylvania, bought her policy in Pennsylvania and only had contact with CNA agents in Pennsylvania. The alleged deceptive communication occurred in Pennsylvania and Landau did not receive any additional communication from Illinois. Also, when CNA changed its policy, it notified Landau from its Tennessee office, and notified the Pennsylvania Department of Insurance in compliance with Pennsylvania law.

Landau argues that Illinois has the necessary connections to the disputed transaction to allow her to bring the lawsuit in Illinois. She claims that the following occurred in Illinois: (a) the creation and design of the CNA LTCI product in question; (b) adoption of improper actuarial assumptions; (c) creation of a false and misleading sales and marketing program; (d) dissemination of false and misleading marketing materials; (e) training of agents on CNA-designed sales materials; (f) the decision to raise premium rates; (g) review of the CNA application form that she completed; (h) consummation of the transaction in which she purchased the LTCI policy upon acceptance and signature of CNA's chief executive officer; (i) acceptance of the initial premium payment; (j) issuance of the LTCI policy; and (k) instruction to Landau to send future premium payments to CNA in Illinois.

Most of these circumstances are activities that occur routinely in corporate headquarters. Yet, these common corporate administrative activities such as the adoption of actuarial assumptions,

dissemination of marketing materials, the training of agents, and the decision to raise premium rates are the very circumstances upon which Landau bases her argument. We find that these activities do not create additional circumstances that relate to the alleged misrepresentation. As we have noted, the court in <u>Avery</u> found that the issuance of the allegedly fraudulent policy from the state whose laws are sought to be invoked is not dispositive. Similar to <u>Avery</u>, in this case the majority of circumstances relating to the alleged violation of the Consumer Fraud Act occurred outside of Illinois. Thus Landau does not have a cognizable claim under the Consumer Fraud Act. Therefore, the trial court was correct in finding that Landau could not bring this action in Illinois under that Act.

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

QUINN, P.J., and THEIS, J., concur.